2005 WY 12

**James Martin HARLOW, aka Thorvaldr Sigwolf, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

**No. 04–101.**

Supreme Court of Wyoming.

Feb. 4, 2005.

Representing Petitioner: Ken Koski, Public Defender; and Marion Yoder, Senior Assistant Public Defender.

Representing Respondent: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Terry L. Armitage, Senior Assistant Attorney General.

Before GOLDEN and VOIGT, JJ., and SULLINS, BURKE * and YOUNG, D.JJ.

VOIGT, Justice.

[¶ 1] This is an appeal from the district court's denial of James Martin Harlow's petition for post-conviction relief from a capital murder conviction, which denial came in the form of summary judgment granted to the State of Wyoming.[1] We affirm.

### FACTS

[¶ 2] The underlying facts of this case were set forth in detail in this Court's opinion affirming Harlow's conviction and sentence in

---

\* Appointed to the Wyoming Supreme Court on January 1, 2005.

1. Although post-conviction relief proceedings are a continuation of the criminal case, they are conducted pursuant to the rules of civil procedure. Wyo. Stat. Ann. § 7–14–101(c) (LexisNexis 2003); *State ex rel. Hopkinson v. District Court, Teton County*, 696 P.2d 54, 61 (Wyo.), *cert. de-*

---

his direct appeal, and will not herein be repeated at length. *Harlow v. State*, 2003 WY 47, ¶¶ 8–14, 70 P.3d 179, 185–87 (Wyo.), *cert. denied*, 540 U.S. 970, 124 S.Ct. 438, 157 L.Ed.2d 317 (2003). Suffice it to say that on June 26, 1997, three Wyoming State Penitentiary inmates—Bryan Collins, Richard Dowdell, and Harlow—killed Corporal Wayne Martinez during an escape attempt. The three men were tried and convicted separately. Collins and Dowdell received life sentences; only Harlow was sentenced to death.[2] *Id.* Additional facts will be noted as they pertain to the issues discussed below.

### POST–CONVICTION RELIEF STATUTES

[¶ 3] Pertinent portions of the Wyoming statutes provide as follows:

**Definition of "this act"; commencement and conduct of proceedings.**

. . .

(b) Any person serving a felony sentence in a state penal institution who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the constitution of the United States or of the state of Wyoming, or both, may institute proceedings under this act.

Wyo. Stat. Ann. § 7–14–101 (Lexis Nexis 2003).

**Claims barred; applicability of act.**

(a) A claim under this act is procedurally barred and no court has jurisdiction to decide the claim if the claim:

(i) Could have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction;

(ii) Was not raised in the original or an amendment to the original petition under this act; or

---

*nied*, 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985).

2. Harlow was convicted of premeditated murder, felony murder, attempting to escape from official detention, and conspiring to escape from official detention. *Harlow*, 2003 WY 47, ¶ 14, 70 P.3d at 186.

(iii) Was decided on its merits or on procedural grounds in any previous proceeding which has become final.

(b) Notwithstanding paragraph (a)(i) of this section, a court may hear a petition if:

(i) The petitioner sets forth facts supported by affidavits or other credible evidence which was not known or reasonably available to him at the time of a direct appeal; or

(ii) The court makes a finding that the petitioner was denied constitutionally effective assistance of counsel on his direct appeal. This finding may be reviewed by the supreme court together with any further action of the district court taken on the petition.

Wyo. Stat. Ann. § 7–14–103 (Lexis Nexis 2003).

### *PROCEDURAL BACKGROUND*

[¶ 4] Harlow's jury trial occurred during the month of October 1998, and he was sentenced on November 5, 1998. Final judgment was entered on December 7, 1998. *Harlow,* 2003 WY 47, ¶ 14, 70 P.3d at 186. Harlow's appeal was docketed in the district court on February 23, 1999. *Id.* at 212. This Court's opinion affirming Harlow's conviction and sentence was published on April 14, 2003. *Id.,* 2003 WY 47, 70 P.3d 179. Harlow filed a petition for post-conviction relief in the district court on December 2, 2003. The parties' motions for summary judgment were heard on March 22, 2004, after which the district court issued its decision letter and order granting summary judgment to the State.[3] On May 11, 2004, Harlow filed in this Court a petition for writ of certiorari or review, which petition was granted on May 25, 2004.

### *ISSUES*

[¶ 5] Harlow presents the following issues:

1. Did the district court err in summarily denying and dismissing each of the following claims of federal constitutional error:

---

**3.** The State's motion to dismiss was converted to a motion for summary judgment, by the consent

A. Were Harlow's Fifth and Fourteenth Amendment rights to a fair trial violated when he was tried in an atmosphere marked by hypersecurity, including but not limited to the heavy physical restraint of Harlow and of two of his witnesses?

B. Were Harlow's Fifth and Fourteenth Amendment rights to a fair trial violated when highly prejudicial and largely irrelevant testimony regarding uncharged misconduct, and his uncounseled statements about that conduct, were improperly admitted?

C. Were Harlow's Fifth, Sixth, and Fourteenth Amendment rights to a fair trial violated when the prosecutor made overreaching and factually incorrect argument urging the jury to, among other things, impose a death sentence in order to protect themselves and future employees of the Department of Corrections, and trial counsel did not object to such improper argument, nor was it broached on appeal?

D. Were Harlow's Fifth, Eighth and Fourteenth Amendment rights to due process and equal treatment before the law violated when the jury was inadequately instructed and also was required to follow a verdict form that was inadequate under the United States Constitution?

E. Were Harlow's Fifth, Sixth, Eighth, and Fourteenth Amendment rights violated when the State did not adduce sufficient evidence to sustain each of his convictions and two of the aggravating circumstances upon which his capital conviction sentence is based?

F. Were Harlow's Sixth and Fourteenth Amendment rights violated when he was rendered ineffective assistance of counsel, and such was not broached on appeal?

G. Were Harlow's Sixth and Fourteenth Amendment rights violated when he was rendered ineffective assistance of appellate counsel?

of the parties.

H. Were Harlow's Fifth, Sixth, and Fourteenth Amendment rights to trial by a fair and impartial jury violated when he was tried by an unqualified jury?

I. Were Harlow's Fifth and Sixth Amendment rights violated when he was not afforded access to counsel and thus gave uncounseled statements about the events of June 26, 1997, and about prior crimes, which statements were admitted against him at trial?

J. Were Harlow's Fifth and Fourteenth Amendment rights to a fair trial, equal protection and due process violated when victim impact testimony was admitted, despite the fact that no state law permits its introduction at capital sentencing proceedings?

K. Were Harlow's Fifth and Fourteenth Amendment rights violated when the constitutional errors that occurred during his capital trial were deemed harmless despite the fact that the State failed to carry its burden of disproving the harm caused by each error?

L. Were Harlow's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and to be accorded equal treatment before the law violated when he was sentenced to death even though his role in the victim's death was minor in comparison to the deeds of his far more culpable co-defendants, both of whom received life sentences?

M. Were Harlow's Fifth and Fourteenth Amendment rights to due process violated when he was tried and sentenced to death under Wyo. Stat. Ann. § 6–2–101, et seq. (Michie 1997), which statutes are vague on their face and as applied?

N. Was Harlow's Eighth Amendment right to be free from cruel and unusual punishment violated by the cumulative constitutional errors that occurred at trial?

O. Were Harlow's Fifth, Sixth, and Fourteenth Amendment rights to the due process guarantee of fundamental fairness violated by the cumulative constitutional errors that occurred at trial?

P. Were Harlow's Fifth and Fourteenth Amendment rights to due process and equal protection violated by the untimely disposition of his appeal?

2. Were Harlow's Eighth and Fourteenth Amendment rights and his state-created liberty interests, protected by *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), violated when the district court held that capital sentencing phase errors are not cognizable in post-conviction relief, regardless of merit?

## STANDARD OF REVIEW

[¶ 6] Our standard for review of summary judgments has been stated many times and need not be reiterated here. *See, for example, NuHome Investments, LLC v. Weller*, 2003 WY 171, ¶ 7, 81 P.3d 940, 944 (Wyo.2003) and *Ahrenholtz v. Laramie Economic Development Corp.*, 2003 WY 149, ¶ 16, 79 P.3d 511, 515, *amended on reh'g*, 2003 WY 149A, 82 P.3d 714 (Wyo.2003). In its decision letter, the district court did an excellent job of capsulizing our jurisprudence in regard to post-conviction relief:

The Wyoming Supreme Court has held:

"The right to claims for relief by petition for post-conviction relief *does not afford the right to treat such proceedings as an appeal from the original trial;* original trial proceedings will not be reviewed by post-conviction proceedings unless and until it is shown that such is necessary to review some claim having to do with denial of petitioner's constitutional rights. *Albert v. State*, Wyo.1970, 466 P.2d 826, 828, reh. den., 468 P.2d 968. It is virtually universally recognized that post-conviction relief is not a substitute for an appeal and *the petition will not lie where the matters alleged as error could or should have been raised in an appeal or in some other alternative manner.* 24 C.J.S. Criminal Law § 1606(9), pp. 696–705; see, West's Digest System, Criminal Law, Key Number 998(2). Relief may be granted only in extraordinary circumstances which strongly suggest a miscarriage of justice."

*Munoz v. Maschner*, 590 P.2d 1352, 1354–55 (Wyo.1979).... There is no constitutional requirement that a state provide any

post-conviction relief action; thus, any allowed remedy is strictly limited to the statutory parameters set out by statute or case law. And, only substantial violations of constitutional rights amounting to a miscarriage of justice will warrant relief under Wyoming's post-conviction relief statutes. The burden is on a petitioner to show specifically what facts exist that establish a violation of constitutional dimension that occurred during the proceedings resulting in his conviction. Relief may be granted only in extraordinary circumstances that strongly suggest a miscarriage of justice. *Munoz, supra.* ·

Initially, a petitioner must demonstrate facts that support his claim of a constitutional violation and shall provide affidavits, records or other evidence supporting his allegations (or state why the same are not attached to his petition). Wyo. Stat. Ann. § 7–14–102 (LexisNexis 2003). The petitioner carries the burden of proving that he has been denied constitutional safeguards. *Hoggatt v. State,* 606 P.2d 718 (Wyo.1980).

Additionally, relief is limited to violations that occur in the "proceedings which resulted in the conviction" and the Wyoming Supreme Court has spoke[n] to the significant limitation imposed on the scope of post-conviction relief available under Wyoming's statutory scheme:

"As stated, Wyoming statutes permit post-conviction relief only for deprivation of constitutional rights *in the proceeding which resulted in conviction. Johnson v. State,* Wyo., 592 P.2d 285 (1979). Constitutional rights are limited to determination of whether defendant was denied the right to counsel, to have witnesses, and to prepare and present his defense. *Morgan v. State,* Wyo., 708 P.2d 1244 (1985). The application for post-conviction relief does not allege denial of a constitutional right *in the proceedings that resulted in his convic-*

*tion* as required by § 7–14–101, supra; rather, appellant claims his sentence after conviction was cruel and unusual. Conviction and sentencing are not synonymous. The former relates to the finding of guilt, the latter to the imposition of a sentence after guilt determination. *State v. Garcia,* 99 N.M. 466, 659 P.2d 918 (1983). Here it is the sentence, not the judgment, that is at issue. Appellant was represented by an attorney, obtained a plea bargain, and pled guilty. He does not seek to have the guilt determination set aside but rather seeks relief from his sentence. It is true that if his sentence is 'cruel and unusual' as he claims, it violates a constitutional right; but that violation did not occur in the proceeding that resulted in his conviction. It occurred, if at all, after that proceeding was concluded and cannot be reached in post-conviction relief."

*Whitney v. State,* 745 P.2d 902, 903–04 (Wyo.1987).... Accordingly, under Wyoming's post-conviction relief system, alleged errors occurring during the sentencing phase of a case, regardless of merit, are simply not cognizable.[4]

Errors relating to the appellate process are not reachable *per se* under this system, as the appellate process occurs *after* the proceedings that result in conviction. However, claims of ineffective assistance of appellate counsel are statutorily recognized as the "portal" through which otherwise waived claims of trial-level error may be reached. But, a petition for post-conviction relief, under Wyo. Stat. Ann. § 7–14–101 *et seq.,* cannot be used as a substitute for an appeal. That said, if the issues already were decided on the merits or on procedural grounds in an earlier proceeding (such as the direct appeal), the claim is barred and cannot be re-litigated. *Johnson v. State,* 592 P.2d 285 (Wyo.1979). Second, pursuant to Wyo. Stat. Ann. § 7–14–103(a), claims are procedurally barred,

---

4. Harlow contends that *Whitney's* restraint on the application of post-conviction relief to sentencing matters is no longer the law, citing *Engberg v. Meyer,* 820 P.2d 70 (Wyo.1991) and *State ex rel. Hopkinson,* 696 P.2d 54. We reiterate here, to the contrary, that the legislature, not this

Court, limited the availability of post-conviction relief to the proceedings that resulted in conviction. It is not for this Court to extend the availability of post-conviction relief beyond its statutory limits, and any past efforts in that regard were in error.

and no court has jurisdiction to hear them, if the claims could have been raised in a direct appeal but were not.

Thus, Wyo. Stat. Ann. § 7–14–103(b)(ii) provides that claims waived for failure to present them on direct appeal (and, thus, barred for post-conviction consideration under Wyo. Stat. Ann. § 7–14–101(a)(i)) may be heard if the court finds that the claim was not raised due to ineffective assistance of appellate counsel. However, recognizing the potential for abuse of this concept, the Wyoming Supreme Court has developed:

"a concrete standard for adequate representation by appellate counsel so that we will not in every instance proceed contrary to the waiver rule and will not in every instance simply address the matter in an ad hoc way which inevitably finds counsel's professional decisions tested by the collective determination of the members of the appellate panel as to what they would have done given the same situation. We conclude that the issue of whether counsel's performance was constitutionally deficient in light of *Strickland v. Washington*, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], as invoked in *Smith v. Murray*, [477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)], and *Murray v. Carrier*, [477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)], should be analyzed in much the same way that this court has analyzed the concept of plain error. *In submitting a claim of deficient representation by appellate counsel, the petitioner in the post-conviction proceeding must demonstrate to the district court, by reference to the record of the original trial without resort to speculation or equivocal inference, what occurred at that trial. The particular facts upon which the claim of inadequate representation by appellate counsel rests must be presented. The petitioner then must identify a clear and unequivocal rule of law which those facts demonstrate was transgressed in a clear and obvious, not merely arguable, way. Furthermore, the petitioner must show the adverse effect upon a substantial right in order to complete a claim that the performance of appellate counsel was constitutionally deficient because of a failure to raise the issue on appeal.* See *McDonald v. State*, Wyo., 715 P.2d 209 (1986); *Tompkins v. State*, Wyo., 705 P.2d 836 (1985), cert. denied 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986); *Munden v. State*, Wyo., 698 P.2d 621 (1985); *Westmark v. State*, Wyo., 693 P.2d 220 (1984); *Hampton v. State*, Wyo., 558 P.2d 504 (1977). *The adverse effect upon a substantial right in the context of ineffective assistance of appellate counsel is shown by demonstrating a ' * * * reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.* A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland v. Washington*, supra, 466 U.S. at 694, 104 S.Ct. at 2068. In this regard the test does address the fairness and integrity of the judicial proceedings. See *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Jones v. State*, Wyo., 580 P.2d 1150 (1978). The reasonable probability must be one that demonstrates a more favorable result to the appellant if the omitted issue had been pursued. See *Nimmo v. State*, Wyo., 603 P.2d 386 (1979).

The application of these objective criteria will permit a trial court presented with a claim for post-conviction relief to decide whether a showing of cause has been made sufficient to avoid the waiver rule. The claim for relief attaching to inadequate representation by appellate counsel can be resolved without necessarily considering the substantive merit of the issues raised. If this process is followed, petitioners for post-conviction relief are not permitted to evade the waiver principle by the device of claiming inadequate representation by appellate counsel. Yet the petitioner who may have been denied adequate representation by appellate counsel is afford-

ed a fair opportunity for potentially meritorious issues to be resolved."

*Cutbirth v. State,* 751 P.2d 1257, 1265–67 (Wyo.1988) (footnote omitted)....

Finally, post-conviction relief is a statutorily created process that has its own statutorily mandated threshold requirements for setting out a claim. Unlike a typical civil action, a petition for post-conviction relief is a "continuation of a criminal action and not a civil case." *State ex rel. Hopkinson v. District Court,* 696 P.2d 54, 61 (Wyo.1985). * * * Mere allegations are insufficient to set out a claim under Wyoming's post-conviction relief process. The Wyoming Supreme Court has clarified:

> "there must be set forth in the text of the petition and the required supporting attachments a substantial claim plus some specificity in support of the claim. *Boggs v. State,* Wyo., 484 P.2d 711 (1971). In order to justify a hearing, there must be more than a naked statement of a conclusion unsupported by an evidentiary basis. *Cook v. State,* 220 Kan. 223, 552 P.2d 985 (1976); *State v. Gillihan,* 85 N.M. 514, 514 P.2d 33 (1973). There must not only be verified factual allegations in the petition, § 7–14–101, but the statutory requirement is that they must be supported, likewise with some specificity, § 7–14–102."

*State ex rel. Hopkinson,* 696 P.2d at 61. (Emphasis in original.)

## DISCUSSION

[¶ 7] Preliminarily, we will note that we do not agree with Harlow's assertions that this Court's analysis should be of the district court's granting of a motion to dismiss for failure to state a claim upon which relief can be granted, that the ordinary rules of civil pleading govern this matter, or that this Court must accept the facts pleaded as true. The district court, apparently without objection, treated the State's motion as a summary judgment motion, not as a motion to dismiss. Harlow's own motion for summary judgment was also at issue. Consequently, the rules governing the hearing of a W.R.C.P. 56 motion, rather than a W.R.C.P. 12(b)(6) motion, were applicable. Furthermore, we have previously made it clear that post-conviction relief proceedings, while utilizing some rules of civil procedure, are continuations of criminal proceedings, and that, therefore, the petition is not comparable to a civil complaint such that notice pleading is sufficient, or that the contents of the petition must be taken as true. *State ex rel. Hopkinson v. District Court, Teton County,* 696 P.2d 54, 61–62 (Wyo.), *cert. denied,* 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985).

[¶ 8] Our role at this juncture is the same as it would be in any review of a summary judgment. We have the same materials before us as did the district court. We will review those materials and determine, *de novo,* and without any deference to the conclusions of the district court, whether the district court correctly applied the law to the facts. We will do so on an issue-by-issue basis.

**A. Were Harlow's Fifth and Fourteenth Amendment rights to a fair trial violated when he was tried in an atmosphere marked by hypersecurity, including but not limited to the heavy physical restraint of Harlow and of two of his witnesses?**

[¶ 9] Harlow characterizes the security measures taken during his jury trial as "hypersecurity." He complains of "heavy physical restraint," including the leg shackles and electronic stunbelt applied to him and to one of his witnesses, Richard Dowdell, and to the visible leg shackles, belly chains and handcuffs applied to another of his witnesses, his brother Anthony Harlow. He also argues that the "prejudicial atmosphere" was affected by some half-dozen armed and uniformed guards stationed around the courtroom, with two stationed very near Harlow and his witnesses. He complains that no pre-trial hearing was conducted to determine the need for any of these security measures, and that the district court made no effort to minimize their effect. Finally, he notes that all but three of his jurors were taken from a panel that had been allowed to observe him fully restrained before the trial began.

[¶ 10] Harlow relies on several federal cases for the proposition that criminal defendants, especially capital defendants, have a constitutional right to appear before their jury free of unnecessary restraints, and that a pretrial hearing to determine the necessity of restraints is required. *See Holbrook v. Flynn*, 475 U.S. 560, 562–72, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986); *Estelle v. Williams*, 425 U.S. 501, 504–13, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); and *Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). He also cites *Asch v. State*, 2003 WY 18, ¶¶ 55–64, 62 P.3d 945, 961–65 (Wyo.2003), wherein this Court relied upon these same cases in condemning the shackling of a defendant in the courtroom, and announced a *future* rule requiring the State, before trial, to present compelling reasons for the shackling of a defendant in front of the jury. *See also Daniel v. State*, 2003 WY 132, ¶¶ 11–19, 78 P.3d 205, 211–13 (Wyo.2003), *cert. denied*, 540 U.S. 1205, 124 S.Ct. 1476, 158 L.Ed.2d 127 (2004).

[¶ 11] The district court denied post-conviction relief to Harlow on this claim with the following findings and conclusions:

Harlow contends that his trial occurred in a prejudicial atmosphere with unwarranted physical restraint of himself and two of his witnesses. It is undisputed that Harlow (and two of his witnesses) was tried under physical restraint. It is contended, however, that this Court did not specifically conduct a pre-trial, particularized hearing to determine the need for any restraints. However, this Court specifically addressed the necessity of Harlow's restraints (before trial and during trial, upon objection by Harlow's trial counsel). The Court considered the need for such restraints and took specific steps to diminish the impact of those restraints and the likelihood that the jury would see the restraints. This Court was intimately involved in the security measures and precautions taken before and at Harlow's trial; these were not matters simply left to the discretion of the sheriff's department.

The Court already determined that Harlow's restraints and any other security measures were necessary and appropriate based upon Harlow's history of violence, the seriousness of the alleged crimes, the potential risk to the jury and other trial attendees, and the risk of attempted escape. And, in fact, this Court made a finding on the record that the jury had not seen Harlow's restraints and that the security measures taken were adequate and necessary.

In any event, pursuant to Wyo. Stat. Ann. § 7-14-103, this Court need not address the merits of [this] issue because the matter that could have been raised in Harlow's direct appeal to the Wyoming Supreme Court. *Munoz v. [Maschner]*, 590 P.2d [1352] at 1354–55 [ (Wyo.1979) ]. Accordingly, this Court will not consider the issue or grant Harlow relief based upon his assertions herein.

[¶ 12] Our analysis of this issue will begin with the observation that the question of courtroom security could, indeed, have been raised in Harlow's direct appeal. And as we have said many times, "[i]ssues amenable to redress through direct appeal are foreclosed from consideration in the context of a petition for post-conviction relief by the doctrine of *res judicata.*" *Duran v. State*, 949 P.2d 885, 887 (Wyo.1997). Thus, only the "portal" of ineffective assistance of appellate counsel for failing to raise the issue in the direct appeal is now available to Harlow.

▮▮▮▮ [¶ 13] As explained earlier herein, a claim of ineffective assistance of appellate counsel in the context of post-conviction relief is subject to a combined *Strickland* test/ plain error analysis. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In establishing the first half of the *Strickland* test—that being the deficient performance of counsel—the petitioner must (1) show by reference to the record what occurred at trial; and (2) identify a clear and unequivocal rule of law that was violated in a clear and obvious way.[5] The second half of

---

5. Harlow's counsel argued during the post-conviction relief motion hearing in district court that *Strickland* had been "set on its head" by *Wiggins*

*v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). As discussed *infra,* we have

the *Strickland* test and the last element of plain error analysis—the adverse effect upon a substantial right—requires a showing that there is a likelihood that, without the error, the petitioner would not have been found guilty. *Johnson v. State,* 592 P.2d 285, 286 (Wyo.), *cert. denied,* 442 U.S. 932, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979).

[¶ 14] Having reviewed the record, we conclude that Harlow has failed to meet any part of the test for ineffective assistance of appellate counsel in this context. To begin with, the constitutional right to a fair trial protected by *Holbrook, Estelle,* and *Allen* was not clearly abridged in this case. The record reveals that on several occasions, the questions of courtroom security and the physical restraint of Harlow arose and were addressed by the district court, and that the district court took appropriate ameliorative action.[6] These efforts were sufficiently timely and substantive. Furthermore, Harlow is unable to show that he suffered any prejudice from the courtroom security measures, let alone that, absent those measures, he would not have been found guilty. Harlow was a convicted murderer serving three consecutive life sentences. Corporal Martinez was murdered during an attempted prison escape. The jury knew that Harlow and his two witnesses—Dowdell and Harlow's brother[7]—all were prison inmates at the time of the trial. Under all the circumstances, there is no likelihood either that the restraint of Harlow and his witnesses contributed to the guilty verdict, or that, had the necessity for such restraints been more clearly placed on the record, the district court would have ordered the restraints removed or lessened.

[¶ 15] The United States Constitution does not require that a defendant *never* be shackled or otherwise restrained during a criminal jury trial. Rather, the United States Constitution requires that the court

balance the defendant's right to a fair trial and the state's interest in courtroom security. That was done in this case. Of course, imprisoned defendants and defense witnesses cannot, without proof of something more, be physically restrained in front of the jury without endangering the defendant's right to a fair trial. But the particular facts of this case, including the nature of the crimes and the ameliorative efforts of the district court in regard to security measures, lead to the conclusion that post-conviction relief under the statute is not available because "extraordinary circumstances [that] strongly suggest a miscarriage of justice" simply do not exist. *Munoz v. Maschner,* 590 P.2d 1352, 1355 (Wyo.1979).

**B. Were Harlow's Fifth and Fourteenth Amendment rights to a fair trial violated when highly prejudicial and largely irrelevant testimony regarding uncharged misconduct, and his uncounseled statements about that conduct, were improperly admitted?**

[¶ 16] The evidence at issue, characterized by Harlow as "404(b)-type" evidence or "prior bad acts" evidence, is what this Court recently has referred to as uncharged misconduct evidence. *See Gleason v. State,* 2002 WY 161, ¶ 5, 57 P.3d 332, 337 n. 1 (Wyo.2002) and *Howard v. State,* 2002 WY 40, ¶ 21, 42 P.3d 483, 490 n. 2 (Wyo.2002). Succinctly stated, W.R.E. 404(b) forbids the introduction of evidence of uncharged misconduct to prove a defendant's character for the purpose of showing that he acted in conformity therewith. The specific evidence to which Harlow objects is evidence concerning his prior crimes, including victim impact evidence as to those crimes. Through motions in limine and trial objections, Harlow succeeded in keeping this evidence out of the guilt phase of his trial, but he was not so successful in the later sentencing phase.[8]

---

concluded that *Strickland's* "objective reasonableness" test is alive and well.

6. For instance, Harlow appeared in civilian clothing, his handcuffs were removed in the courtroom, and counsel table was draped so his leg shackles were not visible to the jury.

7. Harlow's brother testified in the sentencing phase, not the guilt phase, and his physical restraint actually is not cognizable in this proceeding.

8. Neither Harlow's petition for post-conviction relief nor his appellate brief filed thereafter directs this Court to a specific point in the record where uncharged misconduct evidence was admitted during the guilt phase of the trial in violation of W.R.E. 404(b).

[¶ 17] The district court granted summary judgment to the State on this issue on two grounds: (1) that the error, if any, occurred during sentencing proceedings, and not during the proceedings that resulted in Harlow's conviction; and (2) that the issue was waived when it was not raised in Harlow's direct appeal. Based on these two grounds, the district court declined to address the merits of the issue, except as an allegation of ineffective assistance of appellate counsel. In applying that standard, the district court found no violation of a clear and unequivocal rule of law and no proven prejudice.

■ [¶ 18] We affirm inasmuch as Wyo. Stat. Ann. § 7–14–101(b) clearly confines the courts' role under the post-conviction relief act to those proceedings that result in a conviction, and not to sentencing proceedings. *Schuler v. State,* 771 P.2d 1217, 1220 (Wyo.1989); *Sanchez v. State,* 755 P.2d 245, 245 (Wyo.), *cert. denied,* 488 U.S. 862, 109 S.Ct. 161, 102 L.Ed.2d 131 (1988); *Whitney v. State,* 745 P.2d 902, 903 (Wyo.1987). The district court is also correct that this issue was waived when it was not raised on direct appeal. Wyo. Stat. Ann. § 7–14–103(a)(i); *Munoz,* 590 P.2d at 1354. And, because the issue is not cognizable in post-conviction relief, we need not determine whether counsel was ineffective in failing to raise it on appeal.

**C. Were Harlow's Fifth, Sixth, and Fourteenth Amendment rights to a fair trial violated when the prosecutor made overreaching and factually incorrect argument urging the jury to, among other things, impose a death sentence in order to protect themselves and future employees of the Department of Corrections, and trial counsel did not object to such improper argument, nor was it broached on appeal?**

■ [¶ 19] Although this issue, as stated, appears to relate only to the sentencing phase of the trial, Harlow actually questions portions of the State's closing arguments during both the guilt phase and the sentencing phase. Due to the statutory limitations explained above, we will consider only the matters that concern the guilt phase. For the same reason, the district court declined

to address the merits of this issue as related to sentencing. Further, the district court declined to address the merits of the guilt phase issues, except as such may have revealed ineffective assistance of appellate counsel, because those issues could have been raised in the direct appeal. The district court concluded:

> Reviewing the prosecutor's closing argument in its totality, this Court cannot say that the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Lee[Le] v. Mullin,* 31[311] F.3d 1001[1002], 1013 (10th Cir.2002).

Based on that conclusion, the district court further concluded that appellate counsel was not ineffective in deciding against raising this issue in the direct appeal.

[¶ 20] In his petition for post-conviction relief, Harlow alleges that the prosecutor "overreached" with "victim-type" argument during the guilt phase and "indulged in a classic prosecutor's tactic of improperly evoking emotion, while trying to appear not to," when he said the following:

> I was tempted in there, face down in front of you, to hold up the photographs of Corporal Martinez. You've seen them and I'm going to speculate myself that none of you have seen anything like that before. It's a horrible thing to see, but you're not to be driven by prejudice of how much blood or how many injuries. That's a fact to you.
>
> I'd love to be able to argue the emotion of it. I'd love to be able to say this, go do this for Wayne. I'd love to be able to say that to you. That's not the law and that's not your job.

[¶ 21] That allegation of inappropriate argument is the only allegation in the petition directed to the prosecutor's closing argument during the guilt phase of the trial. A review of the transcript of the hearing on the petition reveals that, not only were no additional guilt-phase issues raised, this particular matter was not even addressed. Nevertheless, in his appellate brief, Harlow addresses the following alleged guilt-phase transgressions by the prosecutor: (1) the prosecutor informed the jury that Harlow and Dowdell

were "going to cover each other ... going to lie for each other;" (2) the emotional "gory photograph" statement quoted above; and (3) a "cheap shot" at defense counsel in rebuttal closing that "Mr. Goody grossly misrepresented the law...."

[¶ 22] This Court will not address issues that were not raised below. *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo.2004); *Yates v. Yates*, 2003 WY 161, ¶ 15, 81 P.3d 184, 189 (Wyo.2003); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1208 (Wyo.2000). We do not find in this case that the issues numbered (1) and (3) above are jurisdictional or are of such fundamental nature that our general rule should be abrogated. This is especially true where, as here, the matters were not only absent from the petition for post-conviction relief, neither were they raised on direct appeal. Consequently, we will address only the quoted passage concerning the photographs of the murder victim.

[¶ 23] The alleged impropriety of this portion of the prosecutor's closing argument was not raised in the direct appeal, leaving this Court now with the ability to address it only through the avenue of ineffective assistance of appellate counsel. In that regard, the first element of the *Strickland*/plain error standard is met because it is clear from the record what occurred at trial. As to the second element—the violation of a clear and unequivocal rule of law—Harlow contends in his petition that the prosecutor's remarks violated (1) the rule of *Wilks v. State*, 2002 WY 100, ¶ 8, 49 P.3d 975, 981 (Wyo.2002) and *Justice v. State*, 775 P.2d 1002, 1010 (Wyo. 1989), that victim impact evidence is inadmissible during the guilt phase of a trial, and (2) the rule of *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) and *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974),[9] that a prosecutor's emotional remarks may so infect a trial with unfairness as to result in a denial of due process.

[¶ 24] In his appellate brief, Harlow adds an argument that, because of the prosecu-

tor's official capacity and unique role in the system, the jury may give special weight to what are, in effect, a prosecutor's "testimony" or statements of opinion. *See United States v. Young*, 470 U.S. 1, 18–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *Cargle v. Mullin*, 317 F.3d 1196, 1218 (10th Cir.2003); *United States v. Bess*, 593 F.2d 749, 755 (6th Cir. 1979); and *United States v. Splain*, 545 F.2d 1131, 1134 (8th Cir.1976).

[¶ 25] This Court has well-established standards for the review of allegedly improper closing arguments by prosecutors. As they relate to the allegation at issue, those standards include the following: (1) the petitioner bears the burden of establishing prosecutorial misconduct; (2) the challenged comments are evaluated in the context of the prosecutor's entire argument; (3) the challenged comments are evaluated in the context of the entire record; (4) the prosecutor may not make an improper appeal to passion or prejudice, or attempt to inflame the jury; (5) the prosecutor may not urge his personal beliefs or opinions upon the jury, especially as to the credibility of the evidence; and (6) the test of prejudice is whether, absent the misconduct, the verdict may have been more favorable to the petitioner. *See, for example, White v. State*, 2003 WY 163, ¶ 7, 80 P.3d 642, 646 (Wyo.2003); *Burton v. State*, 2002 WY 71, ¶ 11, 46 P.3d 309, 313 (Wyo.2002); *Trujillo v. State*, 2002 WY 51, ¶ 7, 44 P.3d 22, 25 (Wyo.2002); *Sanchez v. State*, 2002 WY 31, ¶ 18, 41 P.3d 531, 535 (Wyo.2002); *Capshaw v. State*, 10 P.3d 560, 567–68 (Wyo. 2000); *Mazurek v. State*, 10 P.3d 531, 542 (Wyo.2000); *Leiker v. State*, 994 P.2d 917, 918–19 (Wyo.1999); and *Montoya v. State*, 971 P.2d 134, 136–37 (Wyo.1998).

[¶ 26] Application of these rules to the instant case leads inexorably to the conclusion that the cited passage from the prosecutor's closing argument is not cause for reversal. The eight brief sentences of challenged argument fall near the end of thirty-seven pages of the prosecutor's initial closing argument. The specific context of the challenged language is the question of whether the evi-

---

9. Ironically, the court in *Donnelly* held that, in the context of an entire closing argument, inappropriate prosecutorial statements may not equate to such unfairness as to violate due process and require a new trial. *Donnelly*, 416 U.S. at 645, 94 S.Ct. 1868.

dence supports a finding of premeditated murder:

> And finally, I note to you first degree murder, premeditated murder. I was tempted in there, face down in front of you, to hold up the photographs of Corporal Martinez. You've seen them and I'm going to speculate myself that none of you have seen anything like that before. It's a horrible thing to see, but you're not to be driven by the prejudice of how much blood or how many injuries. That's a fact to you.

> I'd love to be able to argue the emotion of it. I'd love to be able to say this, go do this for Wayne. I'd love to be able to say that to you. That's not the law and that's not your job. The job is analyze, even the least of violence, you can look at them for yourself as you deliberate and decide for yourself whether this was a few moments of panic. When the weapons are being switched because one of them wasn't any good. When the others don't work, you go to something else. And how much time went by, even if it was a brief time, the brief interval that Mr. Harlow had to make his decision about his participation in the killing. What was clearly by then the killing of Corporal Martinez.

[¶ 27] Toward the end of a lengthy closing argument, the prosecutor told the jurors to look at the photographs of the murder victim to help them analyze whether this was a premeditated murder. This trial lasted for many days. There were dozens of witnesses and dozens of exhibits. The photographs to which the prosecutor referred were, themselves, exhibits that went into the jury room. While the prosecutor's use of words such as "horrible," "prejudice," "blood," and "emotion," is, perhaps, regrettable, we cannot say that it had any likely effect upon the verdict. Neither do we believe that the challenged comments can be characterized as the prosecutor's opinion or testimony, or as victim impact evidence. Appellate counsel was not ineffective for failing to raise this issue in the direct appeal because it does not provide grounds for reversal.

**D. Were Harlow's Fifth, Eighth and Fourteenth Amendment rights to due process and equal treatment before the law violated when the jury was inadequately instructed and also was required to follow a verdict form that was inadequate under the United States Constitution?**

[¶ 28] Harlow's petition for post-conviction relief suggests, without specifically identifying, numerous issues concerning both guilt-phase and penalty-phase instructions. Most of the instructional issues that are identified relate to the penalty phase and will not be considered herein. Furthermore, no issues concerning jury instructions were raised in Harlow's direct appeal, leaving any guilt-phase instruction issues to be considered only as questions of ineffective assistance of appellate counsel. For these reasons, the district court declined to address the merits of Harlow's jury instruction issues except as they related to the question of ineffective assistance of appellate counsel. The district court concluded that appellate counsel was not ineffective in deciding not to raise jury instruction issues in the direct appeal because the instructions as a whole correctly advised the jury as to the law, and because Harlow had shown no prejudice.

[¶ 29] Some specific guilt-phase instructional issues can be gleaned from Harlow's petition and appellate brief. In his petition, he notes the lack of definition of the word "escape" in Counts II and III.[10] He also complains about an instruction that advised the jury about "awareness" in regard to conspiracy, his fear being that, although the instruction was in reference to the charge of conspiracy to escape, the jury could misinterpret the instruction to allow it to find Harlow guilty of first-degree murder even if he had

---

10. Count II alleged felony murder, with the following elements: (1) on or about the 26th day of June, 1997; (2) in Carbon County, Wyoming; (3) the defendant, James Martin Harlow; (4) while attempting to perpetrate the crime of escape; (5) killed a human being, Wayne Martinez. Count III alleged attempted escape, with the following elements: (1) on or about the 26th day of June, 1997; (2) in Carbon County, Wyoming; (3) the defendant, James Martin Harlow; (4) intending to escape from official detention (the crime of escape from official detention); (5) did an act which was a substantial step towards committing the crime of escape from official detention.

no knowledge that a murder was going to be committed.[11] Next, Harlow condemns Instruction No. 7A, dealing with aiding and abetting, because he was not charged with aiding and abetting.[12] And finally, Harlow complains in his appellate brief that the lack of an *"Enmund"* instruction allowed the jury to "find him guilty" of felony murder without finding that he was a "major participant" in the underlying felony. The thrust of Harlow's *Enmund* argument, however, is that the federal constitution bars the imposition of the death penalty for felony murder based solely upon a defendant's participation in the underlying felony, where he did not kill or intend to kill. *See Enmund v. Florida,* 458 U.S. 782, 797, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).[13]

[¶ 30] Disregarding the *Enmund* issue, which we perceive Harlow intended only as a penalty phase issue,[14] we are left with three jury instruction issues from the guilt phase of the trial: (1) the failure to define the word "escape;" (2) the danger that the jury could have convicted Harlow of first-degree murder based on the conspiracy instruction; and

11. Instruction No. 12 states:

   To be a member of a conspiracy, a Defendant need not know all the other members, nor all the details of the conspiracy, nor the means by which the objects are to be accomplished. Each member of the conspiracy may perform separate and distinct acts.

   Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at the place where a crime takes place or is discussed, or even knowing about criminal conduct does not, of itself, make someone a member of the conspiracy or a conspirator.

12. Instruction No. 7A states:

   It is not necessary that the Defendant personally did every act necessary to constitute the crime of Murder in the First Degree as alleged in Count I. It is enough if he knowingly aided and abetted someone else to commit the crime of Murder in the First Degree as alleged in Count I.

   A person who knowingly aids or abets in the commission of Murder in the First Degree as alleged in Count I may be charged, tried and convicted as if he were a principal.

   Merely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed is not sufficient for the jury to find that the Defendant aided and abetted in the crime of Murder in the First Degree as alleged in Count I. The

(3) the giving of an aiding and abetting instruction. Curiously, while these alleged errors are mentioned in Harlow's petition for post-conviction relief, they are not fleshed out therein, nor in the hearing transcript, nor in the appellate brief.[15] In harkening back to the *Strickland* test/plain error standard for evaluating ineffective assistance of appellate counsel, we can determine without much difficulty what occurred at trial, inasmuch as those instructions that were given, and those that were refused, are in the record. But we do not intend to take it upon ourselves to provide whatever analysis and argument Harlow believes may support his assertion that the instructions mentioned above transgressed a clear and unequivocal rule of law in a clear and obvious way. Neither do we intend to speculate as to what prejudice he might have suffered as a result.

▮▮▮▮▮▮ [¶ 31] Generally, we review jury instruction issues under the following standard:

   We have a well-established standard for review of jury instruction issues:

   State must prove that the Defendant knowingly associated himself with the crime of Murder in the First Degree in some way as a participant—someone who wanted the crime to be committed—and not as a mere spectator.

13. *But see Tison v. Arizona,* 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), where the *Enmund* rule was amended to require only major participation in the underlying felony coupled with a reckless indifference to human life.

14. Indeed, *Enmund* forecloses imposition of the death penalty for felony murder where the defendant did not kill or intend to kill, but it does not foreclose a felony murder conviction in that circumstance. *Enmund,* 458 U.S. at 797, 102 S.Ct. 3368. *Enmund* involves the issue of cruel and unusual punishment under the Eighth Amendment, it does not involve guilt or innocence. *Hopkins v. Reeves,* 524 U.S. 88, 99–100, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998); *Cabana v. Bullock,* 474 U.S. 376, 384–86, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), *abrogated on other grounds by Pope v. Illinois,* 481 U.S. 497, 503 n. 7, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

15. During the summary judgment motion hearing in district court, Harlow's counsel mentioned at least four times that instructional issues or problems should have been raised in the direct appeal, but did not identify specific issues or problems from the guilt phase.

"Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed."

*Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001) (*citing Schmidt v. State,* 2001 WY 73, ¶ 23, 29 P.3d 76, 83 (Wyo.2001) and *Metzger v. State,* 4 P.3d 901, 908 (Wyo.2000)). We analyze jury instructions as a whole and do not single out individual instructions or parts thereof. *Ogden v. State,* 2001 WY 109, ¶ 8, 34 P.3d 271, 274 (Wyo.2001). We give trial courts great latitude in instructing juries and " 'will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial.' " *Id.* (*quoting Harris v. State,* 933 P.2d 1114, 1126 (Wyo.1997)).

*Brown v. State,* 2002 WY 61, ¶ 9, 44 P.3d 97, 100 (Wyo.2002). *See also Wheaton v. State,* 2003 WY 56, ¶ 20, 68 P.3d 1167, 1176 (Wyo. 2003) and *Olsen v. State,* 2003 WY 46, ¶ 134, 67 P.3d 536, 585 (Wyo.2003).

[¶ 32] Taking each challenged instruction in turn, within this general standard, we find no error and, therefore, no deficient performance by appellate counsel in not raising these issues.

[¶ 33] Harlow was charged with attempting to escape from official detention, conspiring to escape from official detention, and felony murder during an attempt to escape from official detention. Each of those crimes is based upon Wyo. Stat. Ann. § 6–5–206(a) (LexisNexis 2003), which states that "[a] person commits a crime if he escapes from official detention." The statute does not contain a definition of the word "escape," and no definition was provided to Harlow's jury. We have said that " '[a] court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances.' " *Wilson v. State,* 14 P.3d 912, 916 (Wyo.2000) (*quoting Compton v. State,* 931 P.2d 936, 941 (Wyo.1997)); *see also Lane v. State,* 12 P.3d 1057, 1061 (Wyo.2000). We see nothing about the word "escape" or its usage in this statute that suggests the word has a technical legal meaning, and there certainly is nothing about the facts—an attempted prison escape—that would confuse the jury as to the word's import.[16] There was no reason to define the word for the jury and, therefore, appellate counsel was not deficient in failing to raise this issue.

[¶ 34] Harlow's contentions in regard to the conspiracy instruction can be found in his petition:

59. Before trial, defense counsel objected to State's proposed Instruction 16, which became Jury Instruction No. 12.... That instruction, following Pattern Instruction No. 13.04, advised the jury about "awareness" and the requirements of membership in a conspiracy.

60. Petitioner had been charged only with conspiracy to escape, not conspiracy to commit murder. The defense's objection was that, as there was no question about Petitioner's participation in the escape attempt, this instruction was unnecessary and that the instruction could be

---

**16.** In some situations, although not in this one, there may be a question as to the meaning of the statutory phrase, "official detention." *See, for example, YellowBear v. State,* 874 P.2d 241, 245 (Wyo.1994); *Westmark v. State,* 864 P.2d 1031, 1033 (Wyo.1993); *Kupec v. State,* 835 P.2d 359, 364 (Wyo.1992); *Oien v. State,* 797 P.2d 544, 546–50 (Wyo.1990); and *Peper v. State,* 768 P.2d 26, 29 (Wyo.1989). Undoubtedly, that is why "official detention" has a statutory definition. *See* Wyo. Stat. Ann. § 6–5–201(a)(ii) (LexisNexis 2003).

highly misleading. Its concern was the jury could misinterpret the instruction to allow them to find Petitioner guilty of first degree murder, despite the fact that Petitioner had absolutely no knowledge that a murder was going to be committed.

[¶ 35] We are unable to conclude that counsel was ineffective in the direct appeal by not raising this issue. It is pure speculation that the jury could have been or was misled by this instruction. To make such an assumption, we would further have to assume that the jury misread and misapplied the instructions, and we are aware of no evidence that such occurred.[17] The conspiracy instruction followed the elements instruction for the charge of conspiring to escape from official detention, and there is nothing in the language or order of the instructions suggesting that the jury should apply or did apply the conspiracy concepts back to the earlier felony murder instructions. Furthermore, while Harlow argues that there was no question that he participated in the escape attempt, making the conspiracy instruction unnecessary, he does not suggest that he conceded that he was guilty of conspiracy to escape. The State had the burden of proving the conspiracy charge and was entitled to the conspiracy instruction. Harlow can point to no clear and unequivocal rule of law that was violated by inclusion of the conspiracy instruction.

[¶ 36] Finally, Harlow contends that it was error for the district court to give Instruction No. 7A, quoted above, because Harlow had not been charged with aiding and abetting, and because aiding and abetting requires specific intent. Trial counsel objected to this instruction, but the issue was not raised in the direct appeal. Consequently, it will be reviewed here only as an allegation of ineffective assistance of appellate counsel for failure to raise the issue.

[¶ 37] The first element of the *Strickland*/plain error test is satisfied because the record clearly reveals both that Count I did not specifically charge *aiding and abetting,* and that the instruction was, indeed, given. But that is the full extent of Harlow's present argument in support of his contention. Nowhere in his petition, in his argument to the district court, in his appellate brief, or in his argument to this Court, does Harlow identify a clear and unequivocal rule of law that was violated by the giving of this instruction. In fact, Harlow actually presents *no* factual or legal argument in regard to this instruction, including any argument as to how he was prejudiced. For that reason, and because Wyo. Stat. Ann. § 6–1–201(b)(i) (LexisNexis 2003) allows for an accessory before the fact (aider and abettor) to be "informed against, tried and convicted as if he were a principal," we will affirm summary judgment in favor of the State on this issue.

**E. Were Harlow's Fifth, Sixth, Eighth, and Fourteenth Amendment rights violated when the State did not adduce sufficient evidence to sustain each of his convictions and two of the aggravating circumstances upon which his capital conviction sentence is based?**

[¶ 38] As stated, this issue questions the sufficiency of the evidence as to each of Harlow's convictions: first-degree premeditated murder, first-degree felony murder, attempt to escape from official detention, and conspiracy to escape from official detention.[18] Sufficiency of the evidence could have been, but was not raised in the direct appeal, leaving ineffective assistance of appellate counsel as the applicable standard of review.

[¶ 39] Harlow's interrelated arguments as to the sufficiency of the evidence focus on the State's alleged failure to prove specific intent. Harlow contends that the State did not prove that he intended that Corporal Martinez, or anyone else, would be killed, thereby negating the specific intent element of first-degree premeditated murder. Next, he

---

17. Instruction No. 4 states:
    The Defendant, James Martin Harlow, has been charged in this case with four (4) counts or separate crimes. You must consider each count, and the evidence pertaining to it, separately. The fact that you may find the Defendant guilty or not guilty as to a crime charged in one count should not control your verdict as to any other crime charged in any other count.

18. For the reasons repeatedly stated herein, we will not consider the penalty-phase issues.

argues that, at most, the evidence showed that he, Dowdell, and Collins intended to take over the penitentiary or be killed in the attempt, and that they did not intend to escape. If there was no intent to escape, there was no conspiracy to escape, no attempt to escape, and no felony murder.

[¶ 40] Harlow relies on two portions of the evidence as showing the failure of the State's proof. First, he contends that Dowdell's testimony established Harlow's secondary role in the attack upon Corporal Martinez, and Harlow's lack of knowledge or intent that anyone would be killed. Second, Harlow argues that inmate Edmundo Ramon was "far from sure" that it was Harlow who yelled "we got one of them" after Corporal Martinez was killed.

■■■■■ [¶ 41] While it can be said that the record is clear as to what happened at trial because a transcript of witness testimony is available, it cannot be said that a clear and unequivocal rule of law was violated when the jury chose to convict Harlow based on the evidence. Harlow's argument actually turns the legal standard on its head. The essence of Harlow's argument is that the jury should have believed Dowdell's protestations of Harlow's relative innocence, and should have resolved any apparent uncertainties in Ramon's testimony in favor of Harlow. But that is not the law. This Court does not look to see if there is evidence that might have supported the defendant's position. Rather,

> " '[t]he appellate test for sufficiency of evidence is whether a rational trier of fact could have been sufficiently armed by the evidence to find the essential elements of the offense beyond a reasonable doubt. In assessing that issue, we view the evidence in a light most favorable to the state, affording [it] the benefit of all reasonable inferences to be drawn therefrom. It is not our task, let alone our place, to reweigh the evidence or reexamine the credibility of the witnesses.' "

*Nollen v. State,* 12 P.3d 682, 684 (Wyo.2000) (*quoting Rodriguez v. State,* 962 P.2d 141, 148 (Wyo.1998) and *Curl v. State,* 898 P.2d 369, 375 (Wyo.1995)).

[¶ 42] In applying that standard, we will not detail the evidence presented during the guilt phase of Harlow's trial. Suffice it to say that sufficient evidence was presented showing Harlow's participation in the concerted attack upon the shift command center and the murder of Corporal Martinez, of Harlow's exultant cry thereafter that "we got one of them," and of the trio's attempt to scale the razor wire fencing surrounding the penitentiary. At the very least, the evidence showed that Harlow struck Corporal Martinez and held him down while Collins and Dowdell stabbed him to death, immediately before "hitting the fence." Appropriate inferences from all the evidence are that Harlow intended that an escape would occur and intended that Corporal Martinez be killed during the attempted escape.[19] Therefore, with knowledge of the applicable standard of review, it was not deficient or ineffective for appellate counsel to decide not to raise sufficiency of the evidence issues in the direct appeal.

**F. Were Harlow's Sixth and Fourteenth Amendment rights violated when he was rendered ineffective assistance of counsel, and such was not broached on appeal?**

[¶ 43] Ineffective assistance of trial counsel was not raised in Harlow's direct appeal. For that reason, the district court declined to address the issue except as an allegation of ineffective assistance of appellate counsel. The district court then concluded that Harlow had failed to show ineffectiveness under that standard because he had failed to show prejudice; that is, he had failed to show that the trial result likely would have been different absent any alleged errors.

---

19. We have said many times that the elements of a crime, including specific intent, may be proved by circumstantial evidence. *See, for example, Sotolongo-Garcia v. State,* 2002 WY 185, ¶ 14, 60 P.3d 687, 690 (Wyo.2002); *Browning v. State,* 2001 WY 93, ¶ 18, 32 P.3d 1061, 1068 (Wyo. 2001); and *Lopez v. State,* 788 P.2d 1150, 1153 (Wyo.1990). Circumstantial evidence is equal to direct evidence and is tested for sufficiency under the same standard. *Lobatos v. State,* 875 P.2d 716, 719 (Wyo.1994).

[¶ 44]   We, of course, must apply the same review standard. ·The underlying or primary question, though, is not what appellate counsel did or did not do, but what trial counsel did or did not do. It probably goes without saying that if trial counsel was not ineffective, appellate counsel was not ineffective in deciding against raising the issue.

▆▆▆▆   [¶ 45].  We apply the following standard in reviewing claims of ineffective assistance of counsel:

> [O]ur paramount consideration is whether, in light of all the circumstances, trial counsels' acts or omissions were outside the wide range of professionally competent assistance. *Gleason v. State,* 2002 WY 161, ¶ 44, 57 P.3d 332, ¶ 44 (Wyo.2002).  An appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).   Ordinarily, he must also demonstrate that prejudice resulted. Under this test, the inquiry is whether or not counsel rendered the assistance a reasonably competent attorney would have offered and, if not, whether his failure to do so prejudiced the defense of the case.  *Id.* This two-part test, the *Strickland* test, is the test we normally apply in reviewing ineffectiveness claims . . . .
>
> We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance, bearing in mind the function of counsel is to make the adversarial testing process work in every case. *Dickeson v. State,* 843 P.2d 606, 609 (Wyo.1992).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Gleason,* 2002 WY 161, 57 P.3d 332.  We do not evaluate the efforts of counsel from a perspective of hindsight but endeavor to reconstruct the circumstances surrounding the challenged conduct and evaluate the professional efforts from the perspective of counsel at the time.  *Dickeson,* 843 P.2d at 609.  We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment.  *Id.* The burden is on the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy.  *Id.*

*Sincock v. State,* 2003 WY 115, ¶¶ 34–35, 76 P.3d 323, 336 (Wyo.2003).

▆▆▆   [¶ 46]   Before we address Harlow's separate allegations of trial counsel ineffectiveness, we must first address his contention that, in capital cases, the *Strickland* test has been substantially modified by *Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), in that the American Bar Association Guidelines· for the Appointment and Performance of Counsel in Death Penalty Cases are now the benchmark for determining the objective reasonableness of counsel's performance.  We have read *Wiggins* and we do not see that it represents any significant amendment of the *Strickland* standard.   In *Wiggins,* the United States Supreme Court reviewed the conduct of two trial attorneys in a death penalty case.   In the process of finding counsel's performance both deficient and prejudicial, the United States Supreme Court reiterated the applicable standard of review.· First, the United States Supreme Court repeated that ineffectiveness claims are tested under the two-part *Strickland* test, with "objective reasonableness" defined in terms of prevailing professional norms.  *Id.* at 521, 123 S.Ct. 2527.  Next, the United States Supreme Court defined those "prevailing professional norms" as the professional standards prevailing in Maryland in 1989.  *Id.* at 524, 123 S.Ct. 2527.  After concluding that counsels' performance fell short of those standards, the United States Supreme Court stated that "[c]ounsels' conduct similarly fell short of the standards for capital defense work articulated by the American Bar Association (ABA)—standards to which we long have referred as 'guides to determining what is reasonable.' " *Id.* (*quoting Strickland,* 466 U.S. at 688, 104 S.Ct. 2052).  Clearly, these passages do not

indicate any substantive departure from the *Strickland* test. Furthermore, the inexperience of counsel in handling death penalty cases, standing alone, does not establish ineffectiveness. *Fields v. Gibson,* 277 F.3d 1203, 1215 n. 7 (10th Cir.), *cert. denied,* 537 U.S. 1023, 123 S.Ct. 533, 154 L.Ed.2d 434 (2002); *Jeffries v. Blodgett,* 5 F.3d 1180, 1198 (9th Cir.1993), *cert. denied,* 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994); *Burden v. Zant,* 903 F.2d 1352, 1361 (11th Cir.1990), *rev'd on other grounds,* 498 U.S. 433, 437, 111 S.Ct. 862, 112 L.Ed.2d 962 (1991); *Thomas v. Gramley,* 951 F.Supp. 1338, 1350 (N.D.Ill.1996), *aff'd,* 144 F.3d 513 (7th Cir. 1998), *cert. denied,* 525 U.S. 1123, 119 S.Ct. 907, 142 L.Ed.2d 905 (1999).

[¶ 47] In his petition for post-conviction relief, Harlow identified four instances of ineffective assistance of trial counsel: (1) failure to renew a motion for judgment of acquittal at the close of the defense evidence; (2) failure to object to the manner in which Harlow and his witnesses were restrained and to the "hypersecurity" atmosphere in the courtroom; (3) failure to offer alternative and limiting instructions to ameliorate the prejudicial impact of both prior victim and current victim impact testimony; and (4) repeatedly violating W.R.Cr.P. 24, which caused the trial judge to take over *voir dire* and which produced a biased jury pool. In his appellate brief, Harlow adds two more allegations: (5) failure to object to prosecutorial misconduct; and (6) failure to offer an *Enmund* instruction.

■ [¶ 48] At the end of the State's case, trial counsel moved for a judgment of acquittal as to the first-degree premeditated murder count and the conspiracy to escape from official detention count. Counsel argued that the State had failed to prove that Harlow had knowledge, let alone intent, that anyone would be killed, and had failed to prove that Harlow agreed with anyone that an escape would occur. The district court denied the motion and it was not renewed at the close of the defense evidence.

[¶ 49] A motion for judgment of acquittal alleging insufficiency of the evidence is made pursuant to W.R.Cr.P. 29(a):

Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or citation after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the state is not granted, the defendant may offer evidence without having reserved the right.

■ [¶ 50] Preliminarily, we must examine the precise issue now before us. Ineffective assistance of trial counsel was not raised in the direct appeal, so the present issue is ineffective assistance of appellate counsel. In other words, appellate counsel's performance allegedly was deficient because trial counsel's deficient performance was not raised. In turn, trial counsel's deficient performance allegedly consisted of not renewing a motion for judgment of acquittal. Two things could have happened had such a motion been made; it could have been granted or it could have been denied. Had it been granted, the case would have been over as to those counts. Had it been denied, the denial could have been appealed directly. Further, "introducing evidence waives the earlier motion and only the later motion may be claimed as error." *Robinson v. State,* 11 P.3d 361, 368 (Wyo.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1620, 149 L.Ed.2d 483 (2001). Consequently, the issue before this Court is not whether trial counsel's initial motion should have been granted; the issue is whether trial counsel should have made a similar motion after close of the defense evidence.

■ [¶ 51] In the end, Harlow's argument now is that, had such a motion been made, the district court would have granted it or would have erred in denying it. Our standard for reviewing the denial of a motion for a judgment of acquittal is as follows:

"[W]e accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn there-

from, leaving out entirely the evidence of the defendant in conflict.

'A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial.' " *DeVries v. State*, 909 P.2d 977, 978 (Wyo. 1996) (*quoting Apodaca v. State*, 796 P.2d 806, 807 (Wyo.1990)). In turn, sufficiency of the evidence arguments are analyzed in the following manner:

"This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did."

*DeVries*, 909 P.2d at 979 (*quoting Hodges v. State*, 904 P.2d 334, 339 (Wyo.1995)).

[¶ 52] We have already considered and rejected on the merits Harlow's sufficiency of the evidence arguments, and we will not repeat that discussion here. Suffice it to say that, based upon all the evidence, it was not unreasonable for the jury to find Harlow guilty of all the charged offenses. We will, however, repeat the admonition that a defendant at trial, and an appellant in this Court, must support a motion for judgment of acquittal with something more than a reference to defense evidence that, if believed by the jury, would have supported acquittal.

[¶ 53] Had Harlow's motion for judgment of acquittal been renewed after presentation of the defense evidence, the mo-

tion would have been denied. Counsel is not ineffective for failing to file a motion that would not have been granted. *Lancaster v. State*, 2002 WY 45, ¶ 58, 43 P.3d 80, 102 (Wyo.2002); *Herdt v. State*, 891 P.2d 793, 799 (Wyo.1995), *cert. denied*, 536 U.S. 944, 122 S.Ct. 2631, 153 L.Ed.2d 812 (2002); *Dickeson v. State*, 843 P.2d 606, 610 (Wyo.1992). It follows, of course, that if trial counsel was not ineffective in this regard, neither was appellate counsel for not raising the issue in the direct appeal.

[¶ 54] Harlow's second allegation of ineffective assistance of trial counsel is the failure to object to the manner in which he and his witnesses were restrained at trial and the alleged atmosphere of "hypersecurity" in the courtroom. As with the previous issue, we will simply note that we have already addressed the merits of this issue and have found it wanting. Under all the facts and circumstances, the district court took reasonable ameliorative actions in regard to courtroom security, and Harlow was not denied a fair trial. Furthermore, trial counsel adequately addressed courtroom security at trial. Harlow has not shown that trial counsel was ineffective and, therefore, appellate counsel was not ineffective in deciding not to raise the issue.

[¶ 55] Harlow's third claim of ineffective assistance of trial counsel—the alleged failure to offer instructions concerning victim impact evidence—and his sixth claim—the alleged failure to offer an *Enmund* instruction—both concern the penalty phase of the trial and are not cognizable in this proceeding. Furthermore, both issues were raised and decided in the direct appeal and are, therefore, procedurally barred from reconsideration in this proceeding. *Harlow*, 2003 WY 47, ¶¶ 38–57, 75–80, 70 P.3d at 192–99, 203–04; Wyo. Stat. Ann. § 7–14–103(a)(iii). His fourth allegation is that trial counsel's repeated violation of W.R.Cr.P. 24 caused the trial judge to take over *voir dire*, which resulted in a biased jury.[20] Citing

---

**20.** W.R.Cr.P. 24(c) states:

*Examination of jurors.*—After the jury panel is qualified the attorneys or a *pro se* defendant shall be entitled to conduct the examination of

prospective jurors, but such examination shall be under the supervision and control of the judge, and the judge may conduct such further examination as the judge deems proper. The

Wyo. Stat. Ann. § 7–14–103, the district court declined to consider this issue because the adequacy of *voir dire* was raised and determined on the merits in the direct appeal. We agree with that conclusion and we also decline to address the issue. Stating the issue in terms of ineffective assistance of trial counsel does not change the fact that the basic issue has already been decided by this Court.[21] In addition, it is clear that the focus of Harlow's complaint is the so-called "death qualification" process, which involves the penalty phase of the trial, and which is not cognizable in the present proceeding. For all of these reasons, we decline to address the *voir dire* issue.

■ [¶ 56] Harlow's fifth allegation of ineffective assistance of trial counsel—failure to object to prosecutorial misconduct—is not raised in his petition for post-conviction relief. In his later appellate brief, however, Harlow complains that "counsel did not object to the prosecutor's misstatement of fact or offensive hyperbole in argument[.]" This complaint is not further fleshed out as a discrete allegation of ineffective assistance of trial counsel, but we can, perhaps, surmise that it involves the matters discussed hereinabove in reference to Harlow's issue "C." It is also conceivable that the allegation was meant to encompass Harlow's argument in the district court hearing that, during closing argument in the penalty phase, the prosecutor made false statements about Harlow's prior record.

[¶ 57] For several reasons, we will not further consider this fifth sub-issue. To begin with, our general rule is that we will not decide matters not raised below. Second, to the extent that ineffective assistance of trial counsel was raised on direct appeal, or could have been raised on direct appeal, we are statutorily foreclosed from considering it in post-conviction relief. Third, matters concerning sentencing are not cognizable in post-conviction relief. And fourth, we have already concluded that the prosecutor's guilt-phase closing argument did not constitute prosecutorial misconduct, so the failure to

judge may assume the examination if counsel or a *pro se* defendant fail to follow this rule. If the judge assumes the examination, the judge may permit counsel or a *pro se* defendant to submit questions in writing. The examination shall be on the record.

(1) The only purpose of the examination is to select a panel of jurors who will fairly and impartially hear the evidence and render a just verdict.

(2) The court shall not permit counsel or a *pro se* defendant to attempt to precondition prospective jurors to a particular result, comment on the personal lives and families of the parties or their attorneys, nor question jurors concerning the pleadings, the law, the meaning of words, or the comfort of jurors.

(3) In voir dire examination counsel or a *pro se* defendant shall not:

(A) Ask questions of an individual juror that can be asked of the panel or a group of jurors collectively;

(B) Ask questions answered in a juror questionnaire except to explain an answer;

(C) Repeat a question asked and answered;

(D) Instruct the jury on the law or argue the case; or

(E) Ask a juror what the juror's verdict might be under any hypothetical circumstance.

Notwithstanding the restrictions set forth in subsections (c)(3)(A)–(E), counsel or a pro se party shall be permitted during voir dire examination to preview portions of the evidence from the case in a non-argumentative manner when a

preview of the evidence would help prospective jurors better understand the context and reasons for certain lines of voir dire questioning.

21. It appears from Harlow's petition that even his own counsel does not believe there was ineffective assistance of counsel. While suggesting that trial counsel's conduct caused the allegedly inadequate *voir dire*, the post-conviction relief petition repeatedly denies deficient conduct by trial counsel: "Defense counsel tried, but failed, to query the jury on these points. It also tried, but failed, to get the court to do so." "Defense counsel repeatedly objected during the process itself, gave reasons for the objections, used all peremptory challenges and refused to pass the panel for cause." "The constitutional infirmity of the voir dire was further pursued after trial with a motion for new trial, which was denied without hearing." "It should be noted that defense made a continuing objection to the content and style of the voir dire, refused to pass the entire panel for cause, moved for a mistrial several times and repeatedly objected to the court's unwillingness to allow properly informative voir dire and also moved to strike the panel." "While lead defense counsel may have often been far less than politic during voir dire, he did propose many valid voir dire questions, both verbally and in writing, many of which [the district court] refused." "Though accused of having 'repeatedly violated' Rule 24 by the Wyoming Supreme Court (*Harlow v. State, supra,* 70 P.3d 179, 188) the record does not support this assertion."

object or to raise it below was not ineffective assistance of counsel.

[¶ 58] Having concluded that trial counsel was not ineffective in any of the particulars raised by Harlow, we cannot score appellate counsel for failing to raise the issue in the direct appeal.

### G. Were Harlow's Sixth and Fourteenth Amendment rights violated when he was rendered ineffective assistance of appellate counsel?

[¶ 59] The allegation of ineffective assistance of appellate counsel contained in Harlow's petition for post-conviction relief is two-pronged. First, he asserts that counsel was ineffective for failing to identify, investigate and raise in the direct appeal those issues identified as "A" through "F" herein. Second, he contends that, "[t]o the extent that any of the issues [raised in the direct appeal] should or could have been decided more favorably to [Harlow] if presented differently, [Harlow] was denied his constitutional rights to due process, equal protection and the effective assistance of counsel."

[¶ 60] Beyond these general complaints, Harlow's petition is almost completely devoid of any specific allegations of ineffectiveness of appellate counsel. He does contend that (1) counsel's experience in capital litigation was woefully short of what the ABA guidelines require; (2) counsel should have raised the physical restraint issue; (3) counsel should have raised the inadequate jury form issue; and (4) appellate counsel's manner of broaching even meritorious claims was calculated to alienate this Court, and may have colored this Court's attitude toward the case.

[¶ 61] During the district court hearing on the petition, Harlow's present counsel emphasized appellate counsel's failure to raise the physical restraint issue, and added complaints that neither instructional issues nor ineffective assistance of trial counsel were raised in the appeal. In particular, counsel identified proportionality/comparative sentencing and the *Enmund* doctrine as examples of instructional issues that were missed.

[¶ 62] We see no purpose in addressing these allegations independently at this point, inasmuch as each of them has been addressed previously herein, within the specific context of ineffective assistance of appellate counsel. As we have repeatedly stated herein, appellate counsel cannot be scored for failing to raise, or for deciding against raising, a non-meritorious issue. Furthermore, Harlow has utterly failed in this post-conviction proceeding to show any prejudice to him from any alleged inexperience of appellate counsel or any alleged failure of appellate counsel to meet the ABA guidelines. In truth, appellate counsel is a well-trained, highly respected Wyoming lawyer with considerable criminal law and appellate experience. Bald assertions of deficiency do not equate to evidence.[22] And finally, post-proceeding affidavits of counsel admitting ineffectiveness are suspect, at best, especially because they rely so heavily on the "20/20" hindsight that is not supposed to be used to evaluate effectiveness of counsel. *Wright v. Hopper,* 169 F.3d 695, 707 (11th Cir.), *cert. denied,* 528 U.S. 934, 120 S.Ct. 336, 145 L.Ed.2d 262 (1999); *Mills v. Singletary,* 161 F.3d 1273, 1286 (11th Cir.1998), *cert. denied,* 528 U.S. 1082, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000); *Walls v. Bowersox,* 151 F.3d 827, 836 (8th Cir.1998), *cert. denied,* 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 552 (1999); *Smith v. Stewart,* 140 F.3d 1263, 1273 (9th Cir.), *cert. denied,* 525 U.S. 929, 119 S.Ct. 336, 142 L.Ed.2d 277 (1998); *Hendricks v. Calderon,* 70 F.3d 1032, 1036 (9th Cir. 1995), *cert. denied,* 517 U.S. 1111, 116 S.Ct. 1335, 134 L.Ed.2d 485 (1996); *Campbell v. Wood,* 18 F.3d 662, 673 (9th Cir.), *cert. denied,* 511 U.S. 1119, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994).

### H. Were Harlow's Fifth, Sixth, and Fourteenth Amendment rights to trial by a fair and impartial jury violated when he was tried by an unqualified jury?

[¶ 63] We are statutorily foreclosed from considering this issue, for two reasons. First, it is not cognizable in a post-conviction

---

22. An example might be suggesting that appellate counsel's manner of broaching Harlow's claims alienated this Court and colored its deci-

sion, without some evidence of such actually happening.

relief proceeding because it concerns only a sentencing issue.[23] Wyo. Stat. Ann. § 7–14–101(b). Second, the issue was decided on the merits in the direct appeal. *Harlow*, 2003 WY 47, ¶¶ 15–24, 70 P.3d at 187–89; Wyo. Stat. Ann. § 7–14–103(a)(iii).

**I. Were Harlow's Fifth and Sixth Amendment rights violated when he was not afforded access to counsel and thus gave uncounseled statements about the events of June 26, 1997, and about prior crimes, which statements were admitted against him at trial?**

[¶ 64] We are statutorily foreclosed from considering this issue because it was decided on the merits in the direct appeal. *Harlow*, 2003 WY 47, ¶¶ 25–37, 70 P.3d at 189–92; Wyo. Stat. Ann. § 7–14–103(a)(iii).

**J. Were Harlow's Fifth and Fourteenth Amendment rights to a fair trial, equal protection and due process violated when victim impact testimony was admitted, despite the fact that no state law permits its introduction at capital sentencing proceedings?**

[¶ 65] We are statutorily foreclosed from considering this issue because it was decided on the merits in the direct appeal. *Harlow*, 2003 WY 47, ¶¶ 38–57, 70 P.3d at 192–99; Wyo. Stat. Ann. § 7–14–103(a)(iii).

**K. Were Harlow's Fifth and Fourteenth Amendment rights violated when the constitutional errors that occurred during his capital trial were deemed harmless despite the fact that the State failed to carry its burden of disproving the harm caused by each error?**

[¶ 66] A careful reading of Harlow's post-conviction relief petition and his ensuing appellate brief reveals that, despite reference to constitutional "errors," and despite the phrase "each error," this issue has a single focus. That focus is apparent in the following introductory passage from the petition:

> The Wyoming Supreme Court determined that, despite the inadmissibility in this jurisdiction of victim impact testimony at capital sentencing proceedings, and regardless of the State's failure to even at-

tempt to show the harmlessness of this (or any other error raised), the receipt of victim impact evidence [in] Harlow's case was "harmless error." *Harlow v. State*, 2003 WY 47, ¶¶ 38–57, 70 P.3d 179, 192–199 (Wyo.2003).

[¶ 67] Clearly, this issue is not cognizable in post-conviction relief. The issue was raised and decided on the merits in the direct appeal. There is not even an attempt to allege ineffective assistance of appellate counsel in regard to the issue. Rather, the issue is stated as if it is an appeal from this Court's ruling in the direct appeal, which is not the purpose of post-conviction relief proceedings. We will not further consider the matter.

**L. Were Harlow's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and to be accorded equal treatment before the law violated when he was sentenced to death even though his role in the victim's death was minor in comparison to the deeds of his far more culpable co-defendants, both of whom received life sentences?**

[¶ 68] We are statutorily foreclosed from considering this issue, for two reasons. First, it is not cognizable in a post-conviction relief proceeding because it concerns only a sentencing issue. Wyo. Stat. Ann. § 7–14–101(b). Second, the issue was decided on the merits in the direct appeal. *Harlow*, 2003 WY 47, ¶¶ 15–24, 70 P.3d at 187–89; Wyo. Stat. Ann. § 7–14–103(a)(iii).

**M. Were Harlow's Fifth and Fourteenth Amendment rights to due process violated when he was tried and sentenced to death under Wyo. Stat. Ann. § 6–2–101, *et seq.* (Michie 1997), which statutes are vague on their face and as applied?**

[¶ 69] Once again, Harlow's attempt to raise this issue in his post-conviction relief petition is nothing more than an attempt to appeal an adverse ruling in his direct appeal. Despite acknowledging that adverse ruling, he contends that "there are enough vagaries

---

23. The issue raised by Harlow is not whether the jury was qualified to determine guilt or inno-

cence. The question, as in many capital cases, is whether the jury was properly "death-qualified"?

in Wyoming's death penalty scheme ... for the statute to be considered unconstitutionally vague." He then "reasserts the other arguments about the infirmity of the statute which he made on appeal here." Finally, in his brief, he admits that the issues he raises, which involve the way in which the jury is to be instructed about aggravators and mitigators, "are sentencing matters."

[¶ 70] We decline to consider this issue because it involves only sentencing matters, and it was decided on the merits in the direct appeal.

**N. Was Harlow's Eighth Amendment right to be free from cruel and unusual punishment violated by the cumulative constitutional errors that occurred at trial?**

[¶ 71] We need not consider this issue because we have not found any constitutional error that is cognizable in post-conviction relief proceedings. *Harlow*, 2003 WY 47, ¶ 88, 70 P.3d at 206; *Kerns v. State*, 920 P.2d 632, 641 (Wyo.1996), *cert. denied*, 531 U.S. 1091, 121 S.Ct. 812, 148 L.Ed.2d 697 (2001).

**O. Were Harlow's Fifth, Sixth, and Fourteenth Amendment rights to the due process guarantee of fundamental fairness violated by the cumulative constitutional errors that occurred at trial?**

[¶ 72] We need not consider this issue for the reason stated directly above.

**P. Were Harlow's Fifth and Fourteenth Amendment rights to due process and equal protection violated by the untimely disposition of his appeal?**

[¶ 73] Wyo. Stat. Ann. § 6–2–103(a) (Lexis 1999) provides for automatic review of capital sentences:

> The judgment of conviction and sentence of death is subject to automatic review by the supreme court of Wyoming within one hundred twenty (120) days after certification by the sentencing court of the entire record, unless the time is extended for an additional period not to exceed sixty (60) days by the supreme court for good cause shown. Such review by the supreme court shall have priority over all other cases.

[¶ 74] Certification of the record in the direct appeal in this case occurred on February 19, 1999, and the case on appeal was docketed four days later. Harlow obtained a 90–day extension of time to file his brief. Briefing was completed with the filing of Harlow's reply brief on November 29, 1999. Oral arguments were heard on February 17, 2000. The opinion of this Court affirming Harlow's convictions and sentences was published on April 14, 2003. The opinion contained the following explanation for this amount of time:

> From this court's study of death penalty jurisprudence, this court acutely appreciates that a capital case, by its very nature, requires of a reviewing court the most meticulous and thoughtful consideration and deliberation of the issues presented. In fulfilling that requirement in this case, the members of this court have had divergent views concerning the resolution of some of the many difficult issues presented and have expended substantial amounts of time working through those divergent views to achieve agreement on the resolution and the reasoning supporting the resolution of these issues. In light of the requirement of meticulous and thoughtful consideration and deliberation, the working through of divergent views to achieve agreement on resolution of issues, the unique set of appellate responsibilities conferred by the legislature upon this court, the errors enumerated in this appeal, the parties' extensive briefing of the issues underlying these enumerated errors, and the caution that the punishment of death is different, *Furman v. Georgia*, 408 U.S. 238, 306, 92 S.Ct. 2726, 2760, 33 L.Ed.2d 346 (1972) (Stewart, J., concurring), this court has taken considerable time to reach its decision in this case and in another capital case submitted for review before this one and which is also decided today. *See Olsen v. State*, 2003 WY 46, 67 P.3d 536 (2003). Although the time to reach decision has been considerable, it has been necessary and unavoidable for the reasons stated.

*Harlow*, 2003 WY 47, ¶ 6, 70 P.3d at 184.

[¶ 75] In his petition, Harlow asserts four ways in which he was prejudiced by the length of time his case remained on appeal:

(1) several important witnesses have "all but disappeared"; (2) he had a "foreshortened" time in which to prepare the petition; [24] (3) he has suffered the "anxiety and indignity" of not knowing what his fate would be; and (4) such delay constitutes a violation of his due process rights as per *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Harris v. Champion*, 15 F.3d 1538 (10th Cir.1994); and *Harris v. Champion*, 938 F.2d 1062 (10th Cir.1991).

■ [¶ 76] Needless to say, this "speedy appeal" issue did not arise out of the proceedings that resulted in Harlow's conviction. Thus, we are statutorily prevented from considering it. Wyo. Stat. Ann. § 7–14–101(b). Furthermore, because it is not raised as an allegation of ineffective assistance of appellate counsel, that procedural bar has not been lifted by Wyo. Stat. Ann. § 7–14–103(b)(ii). However, because "death is different," we will briefly note that application of the four-factor test from *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, to the alleged appellate delay in this case would not achieve a different result for Harlow.[25] Even if we assume that Harlow has established the first factor—excessive delay—we conclude that he has not established that the delay was so unreasonable as to violate his due process rights (factor two), or that he was prejudiced thereby (factor four).[26]

■ [¶ 77] By their very nature, death penalty cases are uniquely and presumptively complex, and this fact must be taken into account for purposes of speedy trial and speedy appeal analysis. *Daniel*, 2003 WY 132, ¶ 45, 78 P.3d at 219; *State v. Coffin*, 128 N.M. 192, 991 P.2d 477, 501 (1999); *Harris*, 15 F.3d at 1562. Indeed, that complexity was the very reason given for the delay in this case, *Harlow*, 2003 WY 47, ¶ 6, 70 P.3d at 184, and Harlow has made no showing that such is inaccurate. This Court also noted in

its opinion in the direct appeal that resolution of the issues in this case was complicated by the simultaneous need to address the same and similar issues in another capital case, the opinion in which was published on the same date. *Id.* These complicating factors indicate that the length of delay in this case cannot be considered to be · presumptively prejudicial.

■ [¶ 78] And beyond that, Harlow's allegations of actual prejudice are not substantiated. For instance, even if some witnesses have "all but disappeared," Harlow's conviction was affirmed in the direct appeal, so those witnesses will not be needed. There is no prejudice where the appeal has been heard and lost. *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir.), *cert. denied*, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 407 (1990); *United States v. Johnson*, 732 F.2d 379, 381 (4th Cir.), *cert. denied*, 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984). Further, incarceration is not "oppressive" under *Barker* where the lack of a meritorious appeal establishes that the appellant was rightfully incarcerated. *Daniel*, 2003 WY 132, ¶ 49, 78 P.3d at 220. This would include Harlow's advancement from simple consecutive life sentences to death row status.

[¶ 79] Harlow also complains that the delay in the appeal only gave him from April 14, 2003, to December 7, 2003, to prepare his post-conviction relief petition. For several reasons, we do not find this sufficient prejudice to rise to the level of a due process violation. First, we have not been shown that eight months is an inadequate time for such an endeavor. Second, Harlow and his counsel surely knew "from day one" that a post-conviction relief petition is a likely necessity in any capital case, and they reasonably could have been expected to begin preparing for it long before the direct appeal opinion was published. And third, Harlow

---

24. Wyo. Stat. Ann. § 7–14–103(d) provides that a post-conviction relief petition must be filed within five years of the date of conviction.

25. These comments are based upon the assumption that delay in adjudicating a state capital case appeal may give rise to an independent due process claim. *See Harris*, 15 F.3d at 1557.

26. It needs to be pointed out that not all of the time from February 17, 2000, to April 14, 2003, can be considered "delay." Obviously, there is some amount of time required to prepare an opinion in a multiple-issue capital appeal. Harlow has not identified what amount of the time that passed in this case was reasonable and what amount was unreasonable.

has not specified how additional time would have made any difference to his presentation of a post-conviction case.

[¶ 80] Harlow's final allegation of prejudice resulting from appellate delay is that he suffered from the anxiety and indignity of not knowing what his fate would be. This allegation is not substantiated by any assertion of facts and, therefore, remains but a hollow claim. Furthermore, we do not believe that such anxiety and indignity, standing alone, come even close to the type of "extraordinary circumstances which strongly suggest a miscarriage of justice" to which Wyoming's post-conviction relief statutes are directed. *See State ex rel. Hopkinson*, 696 P.2d at 64; *Johnson*, 592 P.2d at 286; and *Munoz*, 590 P.2d at 1355.

**2. Were Harlow's Eighth and Fourteenth Amendment rights and his state-created liberty interests, protected by *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), violated when the district court held that capital sentencing phase errors are not cognizable in post-conviction relief, regardless of merit?**

▆▆▆ [¶ 81] This issue was not raised in the post-conviction relief petition because it concerns the district court's handling of the petition. It was, however, appended to the end of Harlow's later appellate brief. While it is not technically an issue that arose out of the proceedings leading to Harlow's conviction, we will address it because this Court, too, has declined to consider Harlow's sentencing phase issues. Consequently, we do not now so much address an independent issue as we do explain our decisions regarding earlier issues.[27]

[¶ 82] This issue focuses upon *Hicks*, 447 U.S. at 346, 100 S.Ct. 2227, which case stands for the proposition that a state may not deprive someone of a statutorily created liberty interest without due process of law. Harlow relates that legal proposition to the instant case as follows:

> To construe Wyoming's post-conviction mechanism as precluding the correction of constitutional errors relating to sentencing,

regardless of magnitude or merit, is to render it virtually meaningless with respect to capital cases which, by statute, are tried in two parts. While Wyoming is not constitutionally required to maintain a post-conviction scheme, it has chosen to do so and, having so chosen, must operate that scheme fairly and evenhandedly. *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). To do otherwise is to run afoul of the Fifth and Fourteenth Amendments to the U.S. Constitution. It cannot single out those sentenced capitally and deprive them of protections available to those convicted and sentenced for non-capital offenses. To do so would constitute not only due process violations but would deny a capital defendant of the protections due under the Eighth Amendment to be free from cruel and unusual punishment when that very punishment is effectively shielded from post-appeal constitutional challenge. Particularly where, as here, petitioner has been denied the effective assistance of appellate counsel guaranteed by the Sixth Amendment in testing the constitutional validity of that sentence, to preclude such an assessment under WS § 7–14–101, *et seq.* offends the notions of fairness embraced under the U.S. and Wyoming Constitutions.

▆▆▆ [¶ 83] While we find this to be an eloquent wish list, we do not find that it accurately reflects the law. To begin with, the United States Constitution does not require states to provide for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Further, such may be curtailed or even abolished without violating due process. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997). The ramification of these holdings is that the "statutorily created liberty interest" protected by *Hicks* is nothing more than that; in other words, the interest is defined by its statutory creator. What that means in the instant case is that Harlow does not have a liberty interest in post-conviction relief review of sentencing matters, and *Hicks* has no application to this case.

---

27. See footnote 4 and the related text, *supra.*

[¶ 84] The second error in Harlow's analysis of his right to post-conviction relief review of his death sentence is his suggestion that the post-conviction relief statute requires construction. We need not construe the statute to determine whether it precludes review of sentencing matters. It does so in clearly expressed words. And we are not at liberty to construe statutes that are not ambiguous. *Union Pacific Resources Co. v. Dolenc*, 2004 WY 36, ¶ 13, 86 P.3d 1287, 1291 (Wyo.2004) (*quoting Rodriguez v. Casey*, 2002 WY 111, ¶¶ 9–10, 50 P.3d 323, ¶¶ 9–10 (Wyo.2002)); *In re Wilson*, 2003 WY 105, ¶ 6, 75 P.3d 669, 672 (Wyo.2003) (*quoting Wyoming Dept. of Transp. v. Haglund*, 982 P.2d 699, 701 (Wyo.1999)).

[¶ 85] The third error in Harlow's analysis of his right to post-conviction relief review of his death sentence is his allegation that such an interpretation of the statute would single out capital defendants and treat them differently from other criminal defendants. This allegation is not supported by any citation to case law or other authority suggesting that non-capital defendants may have their sentencing proceedings reviewed via a petition for post-conviction relief. Such is not authorized by statute and, if it has been done, it has been done erroneously. Non-capital sentencing hearings, like capital penalty phase trials, are not subject to review in post-conviction relief proceedings.

[¶ 86] Next, Harlow errs by contending that limiting post-conviction relief to non-sentencing matters will deny capital defendants their Eight Amendment right to be free from cruel and unusual punishment. That is simply not the case, because every criminal defendant has the right to address any and all sentencing issues in his or her direct appeal, including the question of cruel and unusual punishment. Indeed, Wyo. Stat. Ann. § 6-2-103(d) specifically directs this Court to consider sentencing issues in the automatic review of capital sentences. Harlow, himself, received the benefit of just such a review in his direct appeal. *Harlow*, 2003 WY 47, ¶¶ 75–82, 89, 70 P.3d at 203–05, 206. That review included consideration of the proportionality and *Enmund* issues raised again by Harlow in these proceedings.

[¶ 87] We continue to adhere to the holding of *Whitney*, 745 P.2d at 903–04, wherein we recognized these particular limitations in the statutory post-conviction relief scheme. We conclude that, because Harlow had no statutory right to review of his sentence via post-conviction relief, the district court's refusal to decide sentencing issues was not in error.

## CONCLUSION

[¶ 88] Finding no meritorious claims in Harlow's petition for post-conviction relief, we affirm the summary judgment granted to the State. Further, we order that mandate issue forthwith, that the existing stay of execution is vacated, and that the new date for execution of the sentence of death is thirty days from the date mandate issues. *See Hopkinson v. State*, 704 P.2d 1323, 1330–31 (Wyo.), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). The case is remanded to the district court for issuance of a new warrant directed to the director of the department of corrections to carry out the execution of the sentence as provided by law.